UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **Golden Oil Company** | § | CASE NO. 03-36974-H2-11 |
| *a Delaware Corporation* | § | |
| | § | |
| | § | |
| DEBTOR | § | (CHAPTER 11) |

### FINAL ORDER PURSUANT TO SECTION 364 AUTHORIZING DEBTOR (1) TO OBTAIN POST-PETITION FINANCING, AND (2) GRANTING SENIOR LIENS AND PRIORITY ADMINISTRATIVE EXPENSE STATUS

Came on for final hearing, the AMENDED MOTION FOR AUTHORITY TO OBTAIN SECURED CREDIT PURSUANT TO 11 U.S.C 364(c) (the "DIP Financing Motion") pursuant to 11 U.S.C. §§ 364(c) and Fed. R. Bankr. P. 4001(c), filed by the Golden Oil Company, Inc. (the "Debtor") as Debtor and Debtor-in-Possession, seeking, *inter alia*:

    a.    authority, pursuant to Sections 364(c) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for Debtor to obtain post-petition loans, advances and other financial accommodations of up to the aggregate outstanding amount of **$150,000** (the "DIP Facility") pursuant to the terms and conditions set forth in the Debtor in Possession Loan Agreement ("the DIP Agreement") by and between Debtor, and Ralph T. McElvenny ("McElvenny"), substantially in the form annexed as Exhibit "A", secured by first priority security interests in and liens upon all of the Collateral (as hereinafter defined) pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

    b.    authority for Debtor to enter into and execute the DIP Loan Agreement, together with all other related agreements, documents and instruments referred to in the DIP

10

L:\mcc004\00001\0323756 RTF\ELR


EXHIBIT 4.2

Loan Agreement; the granting to McElvenny of a secured super-priority administrative claim status for a claim of $150,000 ("Secured Post-Petition Claim") pursuant to Section 364(c)(1) of the Bankruptcy Code over any and all other administrative expenses of the kind specified in section 503(b) or 507(b), including chapter 7 administrative expenses, if any and allowance of an administrative claim in favor of McElvenny in the amount of $168,800 (amount to be confirmed) with respect to advances made by McElvenny prior to entry of this order.

Pursuant to the pleadings, evidence and arguments of counsel,

**THE COURT FINDS THAT:**

A. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).

B. Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 12, 2003 (the "Petition Date") and is continuing in the management and possession of its business and properties as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

C. Debtor has provided due notice of this Motion in accordance with Local Bankruptcy Rule 4001 to (i) the United States Trustee for the Southern District of Texas, (ii) the twenty largest unsecured creditors, (iii) the official creditors committee, (iv) the attorneys for the Secured Creditors of the Debtor, (v) all taxing authorities, and (vi) the other parties listed on the general service list containing the names of those persons and entities that have filed requests for service of process and papers pursuant to Bankruptcy Rule 2002.

D. Without the financing proposed by the Motion, Debtor will not have the funds necessary to continue the operation of Debtor's business and the management and preservation of Debtor's assets and properties.

E.  Debtor is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, or pursuant to Sections 364(a) and (b) of the Bankruptcy Code.

F.  No other source of financing exists on terms more favorable than those offered by McElvenny.

G.  Debtor has requested that McElvenny make loans and advances and provide other financial and credit accommodations to Debtor in order to provide funds to be used by Debtor for its general operating, working capital and other business purposes in the ordinary course of Debtor's business, which will benefit Debtor, its estate and creditors.

H.  McElvenny is willing to make such loans and advances and provide such other financial and credit accommodations on a secured and superpriority basis up to $150,000 as more particularly described herein and subject to the terms and conditions contained herein. The ability of Debtor to continue its business and reorganize depends upon the Debtor obtaining such financing from McElvenny.

I.  The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of Debtor's business and the management and preservation of Debtor's assets and properties and is in the best interests of Debtor, its estates and creditors.

J.  Based on the record before the Court, the terms and conditions of the DIP Loan Agreement and this Final Order are fair and reasonable, were negotiated in good faith and are the best available to the Debtor under present market conditions and the Debtor's financial circumstances. McElvenny is extending financing to Debtor in good faith. McElvenny is therefore entitled to the benefits of the provision of Section 364(e) of the Bankruptcy Code, and all post-petition loans, advances or other financial and credit accommodations made or provided to Debtor by McElvenny as authorized by this Final Order shall be deemed to have been made in good faith, as that term is defined in Section 364(e) of the Bankruptcy Code.

K.  Prior to entry of this order, McElvenny advanced the sum of $168,800 on a post-

petition basis by or for the benefit of the Debtor.

L.  The findings and stipulations contained herein are only for the purposes of obtaining post-petition financing and granting the liens and claims set forth herein and for no other purpose.

M.  Appropriate notice of the hearing requesting the entry of this Final Order and the Final Hearing has been provided.

N.  Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Final Order.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1.  The DIP Financing Motion is hereby granted and approved to the extent provided below. This Order shall hereinafter be referred to as the "Final Order."

2.  The DIP Loan Agreement is hereby APPROVED and Debtor is hereby immediately authorized and empowered to borrow and obtain loans, advances and other financial accommodations from McElvenny up to the sum of $150,000, pursuant to the terms of this Final Order and the terms and conditions set forth in the DIP Loan Agreement.

3.  Debtor is authorized and directed to execute, deliver, perform and comply with the terms, conditions and covenants of the DIP Loan Agreement and this Final Order, together with all related documents, agreements, notes and instruments executed and/or delivered in connection therewith or related thereto as all of the same have been or hereafter may be amended, modified, extended, renewed, restated or replaced (collectively, the "DIP Loan Documents"). Such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing and financing arrangements by and between Debtor and McElvenny with respect to the Secured Post-Petition Claim for all purposes, including, without limitation, to the

4

extent applicable, the payment of all principal, interest and other fees and expenses, including reasonable attorneys' fees and legal expenses, as more fully set forth in the DIP Loan Documents. Upon execution and delivery to McElvenny, the DIP Loan Documents shall constitute the legal, valid and binding obligations of the Debtor.

4. Attached as Exhibit B is a budget for the three month period ending January 30, 2003. The budget establishes the need for the DIP financing. Within 10 days after the end of each month, the Debtor shall submit an updated budget to counsel for the Official Unsecured Creditors Committee (the "Committee") showing the proposed expenses to be paid for the coming month and the actual expenses vs. budget for the preceding month and, if necessary, modify the revenue and expense estimates shown for the succeeding period. The Debtor shall also provide ten (10) business days advance notice of a draw under the DIP Loan Agreement, including the amount and the purpose of the draw, to Counsel for the Committee. If the Committee objects to a proposed draw not shown on Exhibit B or a revised budget, it may file a motion requesting the Court to prohibit the draw or incurrence of the budgeted expenditures. The Committee is hereby granted the right to review and object to any proposed draw or budget.

5. Pursuant to this Final Order and the DIP Loan Agreement, to secure the payment and performance of the Secured Post-Petition Claim of Debtor to McElvenny of whatever kind or nature or description, absolute or contingent, hereafter arising under the DIP Loan Documents and/or this Final Order, solely with respect to the Secured Post-Petition Claim (collectively, the "Obligations"), and except as set forth in paragraph 7 below, McElvenny shall have and is hereby granted, effective on and after the date of this Final Order, valid and perfected first priority security interests and liens, superior to all other creditors of Debtor's estate, except as provided for in this final order and subject only to existing non-avoidable liens, in and upon all of the existing and future assets and properties, both real and personal, of Debtor, whether acquired prior to, concurrently with, or after the filing of the petition commencing

Debtor's Chapter 11 case (collectively, the "Collateral"), including, without limitation, and by way of general description:

(a) Accounts;

(b) Intellectual Property;

(c) Borrowers' Books;

(d) Equipment;

(e) General Intangibles;

(f) Contract Rights;

(g) Negotiable Collateral;

(h) Real Property Collateral (including any Leasehold Property);

(i) all collections and any other money, cash and cash collateral or other assets of Debtor that now or hereafter come into possession, custody, or control of the Debtor;

(j) mineral interests; and

(k) all proceeds and products, whether tangible or intangible, of any of the foregoing, including, without limitation, insurance proceeds and any claims against third parties for loss or damage to or destruction of any or all of the foregoing.

6. McElvenny shall have all rights and remedies with respect to Debtor, the Secured Post-Petition Claim and the Collateral as are set forth in the DIP Loan Documents and this Final Order solely with respect to the Secured Post-Petition Claim.

7. It is expressly understood that the maximum amount of the lien granted herein shall be $150,000 representing loans made pursuant to the DIP Loan Agreement after the date of this Order. The $168,800 advanced by McElvenny prior to the date of this Order shall be entitled to priority only as an ordinary (not a super-priority) administrative expense claim and shall not possess any security interest in the assets of the Debtor.

8. This Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests, mortgages, deeds of trust, collateral assignment of leases, leasehold mortgages, and liens upon the property of Debtor's estate granted to McElvenny as set forth herein and in the DIP Loan Documents, without the necessity of filing, recording or serving any financing statements, mortgages, or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to McElvenny, in this Final Order and the DIP Loan Documents. Such security interests, mortgages and liens granted to McElvenny shall be prior and senior to all security interests, liens, claims and encumbrances of all other creditors in and to such property, except to the extent provided in the DIP Loan Document and as set forth in this Final Order. If McElvenny shall, in his discretion, elect for any reason to file any such financing statements, mortgages or other documents with respect to such security interests and liens, Debtor is authorized and directed to execute, or cause to be executed, all such financing statements, mortgages or other documents upon McElvenny's request and the filing, recording or service thereof (as the case may be) of such financing statements, mortgages or similar documents shall be deemed to have been made at the time of and on the Petition Date. McElvenny may, in his discretion, file a certified copy of this Final Order in any filing or recording office in, any county or other jurisdiction in which the Debtor has an interest in real or personal property.

9. Debtor is hereby authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements in addition to the above DIP Loan Documents as McElvenny may reasonably require as evidence of and for the protection of the Obligations, the Collateral or which may be otherwise deemed necessary by McElvenny to effectuate the terms and conditions of this Final Order and the DIP Loan Documents, each of such documents, instruments, and agreements being included in the definition of "Loan Documents" contained herein.

10. Except as it relates to McElvenny rights under paragraph 13 below, the automatic stay provisions of § 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit McElvenny to implement the terms and conditions of the DIP Loan Documents and the provisions of this Final Order.

11. As additional security for the Secured Post Petition Claim of Debtor to McElvenny hereafter arising pursuant to this Final Order, the DIP Loan Documents, or otherwise, and in addition to the foregoing, McElvenny is granted an allowed secured and super-priority administrative claim in accordance with Section 364(c)(1) of the Bankruptcy Code having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor, <u>subject only to existing perfected non-avoidable liens</u>, and the specific terms and conditions of this Final Order, now in existence or hereafter incurred by Debtor and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(b), 506(c) 507(a), 507(b) or 726 of the Bankruptcy Code and shall at all times be senior to the rights of the Debtor or any successor trustee in this or any subsequent bankruptcy case. It is expressly understood that the secured and super-priority administrative claim is limited to amounts advanced by McElvenny after the date of this order up to a maximum of $150,000.

12. In the event that the Court converts this case to a Chapter 7 case and there are insufficient assets to satisfy the fees of the Professionals (as hereinafter defined), McElvenny's security interests in and liens upon any of the Collateral granted herein up to a maximum of $150,000 shall be subordinate <u>only</u> to (a) the fees and expenses of the Clerk of this Court or the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) the outstanding and unpaid fees and expenses of the professionals retained by Order of this Court pursuant to Sections 327 and 1103 of the Bankruptcy Code ("Professionals"), which fees have been awarded or allowed by order of this Court, in accordance with Sections 326, 330 and 331 of the Bankruptcy Code, in connection with services rendered after the Petition Date (collectively,

the "Allowed Professional Fees"), in an amount not to exceed $50,000 in the aggregate (collectively, the "Professional Fee Carve-Out"). All fees, expenses and claims paid to Professionals (excluding the application of any pre-petition retainers) after the occurrence of a declared Event of Default shall be applied to and reduce the available Professional Fee Carve-Out. Notwithstanding the foregoing, the Professional Fee Carve-Out cannot be used for the payment or reimbursement of any fees or disbursements of Debtor or the Committee incurred in connection with the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (I) invalidating, setting aside, avoiding, subordinating, in whole or in part, the liens and security interests in any of the Collateral granted in favor of McElvenny, or (ii) preventing, hindering or delaying, whether directly or indirectly, McElvenny's assertion or enforcement of its liens or realization upon any Collateral.

13. Except as expressly permitted herein, no costs or expenses of administration, which have or may be incurred in Debtor's Chapter 11 case, ~~any conversion~~ or *by* dismissal of any of Debtor's Chapter 11 case pursuant to Section 1112 of the Bankruptcy Code, ~~or in any future proceedings or cases related thereto~~, shall be charged against McElvenny pursuant to Section 506(c) of the Bankruptcy Code, without the prior written consent of McElvenny, and no such consent shall be implied from any other action, inaction or acquiescence by McElvenny.

14. In the event of the occurrence of any of the following: (a) the failure of Debtor to perform in any material respect any of its obligations pursuant to this Final Order (as set forth in the DIP Loan Agreement) or (b) the occurrence of any "Event of Default" under the DIP Loan Agreement, including the failure to comply with or perform any of the terms and conditions of the DIP Loan Agreement or the other Loan Documents (the foregoing being referred to in this Final Order, individually, as an "Event of Default" and collectively, as "Events of Default"), then (unless such Event of Default is specifically waived in writing by McElvenny,

which waiver shall not be implied from any other action, inaction or acquiescence by McElvenny) and upon or after the occurrence of any of the foregoing which is continuing, and at all times thereafter, after giving fifteen (15) Business Days notice in writing, served by overnight delivery service or facsimile to Debtor, Debtor's counsel, counsel to the Committee, a Trustee, if appointed, and the Office of the United States Trustee: all of the Obligations shall become immediately due and payable; however, the automatic stay provided for pursuant to Section 362 of the Bankruptcy Code and any other restrictions on the enforcement by McElvenny of liens and security interests or any other rights under the Loan Documents granted to or for the benefit of McElvenny or pursuant to this Final Order shall remain in effect unless and/or until vacated or modified by separate order of the Court after notice and hearing. McElvenny shall not have any obligation to lend or advance any additional funds to Debtor, or provide other financial accommodations to Debtor upon or after the occurrence of an Event of Default.

15. Until the Secured Post-Petition Claim has been indefeasibly paid and satisfied in full; without further order of the Court: (a) no other party shall foreclose or otherwise enforce any junior lien or other right such other party may have in and to any property of Debtor's estate upon which McElvenny holds or asserts a lien or security interest, (b) upon and after the occurrence of an Event of Default, and subject to McElvenny being granted relief from the automatic stay, McElvenny, in his discretion, in connection with a liquidation of any of the Collateral, may (i) enter upon, occupy and use any real property, fixtures and equipment owned or leased by Debtor, and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its business, all without interference from the respective lessors, licensors or other third parties for the purpose of conducting liquidation sales of Debtor's assets and properties; <u>provided, that,</u> McElvenny shall be responsible for the payment of the monthly rent and/or other charges (taxes, insurance, common area charges and utilities), rentals, royalties due such lessor or licensor for rentals solely for the period of time that

McElvenny actually occupy or use the leased premises, the leased equipment or the intellectual property.

16. Upon the payment in full of the Secured Post Petition Claim under the DIP Loan Agreement owed to McElvenny and termination of the rights and obligations arising under the DIP Loan Agreement and this Final Order, each of McElvenny and Debtor shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action with respect to one another pursuant to the terms of this Final Order and/or the DIP Loan Agreement.

17. All post-petition loans, advances and other financial accommodations under the DIP Loan Agreement are made in reliance on this Final Order and Debtor shall not seek at any time in Debtor's Chapter 11 case any order which (a) authorizes the sale, lease, or other disposition of property of Debtor's estate without providing for the payment in full of the Secured Post-Petition Claim, except as expressly permitted hereunder, (b) authorizes the obtaining of credit or the incurring of indebtedness under Section 364(d) of the Bankruptcy Code, (c) grants any other rights against Debtor and/or its estate secured by a lien or security interest, which is equal or senior to the liens or security interests in the Collateral granted to McElvenny, or which, is entitled to priority administrative claim status which is equal or superior to that granted to the Secured Post-Petition Claim, unless, in each instance (i) McElvenny shall have given their express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by McElvenny, or (ii) such other order requires that the Secured Post-Petition Claim shall first be indefeasibly paid in full in accordance with the terms of this Final Order.

18. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered (a) converting Debtor's Chapter 11 case to a Chapter 7 case, (b) confirming or consummating any plan of reorganization of Debtor, or (c) dismissing the Debtor's Chapter 11 Case or any subsequent case pursuant to Sections 303, 305 or

1112 of the Bankruptcy Code, and the terms and provisions of this Final Order as well as the priorities in payment, liens, and security interests granted pursuant to this Final Order and the Loan Documents shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Final Order until all Obligations are indefeasibly paid and satisfied in full.

19. The provisions of this Final Order shall inure to the benefit of Debtor and McElvenny and shall be binding upon Debtor and McElvenny and their respective successors and assigns, including any Trustee or other fiduciary hereafter appointed as a legal representative of Debtor or with respect to property of the Debtor's estate, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and shall also be binding upon all creditors of Debtor and other parties in interest.

20. Consistent with Sections 364(e) of the Bankruptcy Code, if any or all of the provisions of this Final Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by Debtor to McElvenny post-petition prior to the effective date of such modification, vacation or stay, or (b) the validity or enforceability of any security interest, lien, or priority authorized or created hereunder or pursuant to the DIP Loan Documents. Such indebtedness, obligations or liabilities incurred post-petition by Debtor to McElvenny prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Final Order, and McElvenny shall be entitled to all the rights, remedies, privileges and benefits granted herein and pursuant to the Loan Documents, as applicable, with respect to all such indebtedness, obligations or liabilities. All Loans and Advances made pursuant to the DIP Loan Agreement are made in reliance upon this Final Order, and, therefore the indebtedness resulting from such Loans and Advances prior to the effective date of any stay, modification or vacatur of this Final Order cannot be (x) subordinated, (y) lose its priority or

superpriority administrative expense status, or (z) be deprived of the benefit of the first priority liens and security interests granted in favor of McElvenny.

21. Debtor irrevocably waives any right to seek any modifications or extensions of this Final Order without the prior written consent of McElvenny, and no such consent shall be implied by any other action, inaction or acquiescence by McElvenny.

22. The provisions of this Order shall not place any additional liens on or impair the interests or rights of Energen Resources Corporation in any way. The Debtor shall pay post-petition overriding royalty payments and working interest payments to Energen.

23. The Debtor and McElvenny shall file an amendment to the Original Joint Plan of Reorganization filed on September 9, 2003 ("Plan"), proposing that assets and liabilities of Golden Oil Holdings Corporation be consolidated at the time of confirmation of the Plan.

24. The Debtor shall terminate the Contract Operating Agreement entered into between itself and the Golden Oil Holding Corporation effective October 31, 2003. All operations previously conducted by the Golden Oil Holding Corporation shall be transferred to the Debtor effective November 1, 2003. This means that all employees of Golden Oil Holding Corporation will be transferred to the Debtor, the Debtor will assume all expenses of operation, and the Debtor will include information concerning these operations on its Monthly Operating Report beginning with the month of November 2003.

25. To the extent the Debtor collects and/or surcharges revenue for plugging and abandonment costs, such funds shall be placed in a separate escrow account in a form satisfactory to the Committee and such funds shall be used exclusively to satisfy the actual cost of plugging and abandoning wells.

SIGNED this the 10th day of November 2003.

*Wesley W. Steen*
UNITED STATES BANKRUPTCY JUDGE

AGREED AS TO FORM AND SUBSTANCE:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _____
Edward L. Rothberg
State Bar No. 17313990
1400 Summit Tower
Eleven Greenway Plaza
Houston, Texas 77046
Telephone:   (713) 961-9045
Facsimile:   (713) 961-5341

ATTORNEYS FOR RALPH T. MCELVENNY


LAW OFFICES OF PETER JOHNSON.

By: _____
Peter Johnson
State Bar No. 10778400
2820 Summit Tower
Houston, Texas 77046
Phone:  713-552-0025
Facsimile:  713-552-1433

ATTORNEYS FOR DEBTOR

HELLER, DRAPER, HAYDEN, PATRICK & HORN, LLC


By: _____
Douglas S. Draper
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Phone: 504-568-1888
Facsimile: 504-522-0949

ATTORNEYS FOR OFFICIAL UNSECURED CREDITORS COMMITTEE

LOCKE, LIDDELL & SAPP

By: _____
Philip Eisenberg
Elizabeth Freeman
600 Travis Street, Suite 3400
Houston, TX 77002
Phone: 713-226-1200
Facsimile: 713-223-3717

ATTORNEYS FOR ENERGEN CORPORATION

DOLAN & DOMENICI

By: _____
Christopher Shaw
6100 Seagull Street, NE
Suite 205
Albequerque, NM 87109
Phone: 505-884-3424
Facsimile: 505-884-3424

ATTORNEYS FOR GEORGE LOTSPEICH

0323756.RTF
11/7/2003 5:13:38 pm