IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GOLDEN OIL COMPANY, | § | |
|     a Delaware Corporation | § | CASE NO. 03-36974-H2-11 |
| | § | Chapter 11 |
| Debtor. | § | |

**ORDER CONFIRMING THIRD AMENDED AND RESTATED JOINT PLAN
OF REORGANIZATION AS MODIFIED FILED BY DEBTOR GOLDEN OIL
COMPANY, INC. AND RALPH T. MCELVENNY, AEROPANEL CORPORATION INC.
AND INSTRUMENT SPECIALITIES COMPANY [Docket #224, 290, 292]**

On April 23, 2004, the Debtor, Golden Oil Company, Inc., as debtor-in-possession, Ralph T. McElvenny, Jr. Aeropanel Corporation. and Instrument Specialties Co., Inc. ("Plan Proponents") filed their Third Amended and Restated Joint Plan of Reorganization (the "Plan"). This Court heard testimony and arguments of counsel, considered evidence, objections and responses on May 28, 2004.[1] Having considered the foregoing, this Court finds as follows:

### I. Background

1. On May 12, 2003 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 et sq. (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed.

2. The Plan contemplates a reorganization of the Debtor with revenue derived from operations to be utilized to fund payments under the Plan.

---

[1]Capitalized terms not defined in this Order shall have the meanings set forth in the Plan.

3. In addition to operational revenues, the co-proponents of the Plan shall provide a substantial cash infusion to the Debtor by increasing the existing DIP Financing by $350,000. These funds shall be used to pay Allowed Administrative Expense Claims and other payments necessary to exit bankruptcy.

4. The Third Amended Disclosure Statement referring to the Plan was approved by the Court on April 23, 2004.

5. On April 30, 2004, the Debtor served (i) the Plan, (ii) the Third Amended Disclosure Statement, (iii) the Order Approving Third Amended Disclosure Statement and Fixing Time for Filing Acceptances or Objections to Plan, Combined with Notice Thereof, and notice of the confirmation hearing, and (iv) a ballot to all creditors and parties-in-interest.

6. On May 26, 2004, the Plan Proponents filed a proposed Modification and Motion to approve Modification (Docket #290 "Modification" and 291 respectively). On May 27, 2004, the Plan Proponents filed a proposed amended modification to the Plan dealing only with paragraph 6.13 at Doc. #292 ( the "Amended Modification", collectively with Doc. #290, the "Modifications"). In addition, on May 26 and 27, 2004, the Modification and Amended Modification, respectively were served on all creditors and parties-in-interest. The Modifications only affect McElvenny, Energen and EOG. Since all of these parties have accepted the Modifications, there is no need to provide additional disclosure or re-solicit votes.

7. Notice of the matters described in paragraph five (5) and six (6) to the creditors and parties in interest of the Debtor was adequate and appropriate.

## II. Votes, Objections, and Resolutions

8. Class 1 consists of all pre-petition priority claims. The Plan provides that Class 1 Claims shall be paid in full subsequent to the Effective Date as specified in Article 5.1 of the Plan. Class 1 is not impaired and is deemed to have accepted the Plan.

9. Class 2 Claims are the Allowed Secured Claims of the co-proponents of the Plan and the State of New Mexico. Class 2 is impaired and voted to accept the Plan.

10. Class 3 Claims consists of Allowed Unsecured Claims against the Debtor. Class 3 is impaired and voted to accept the Plan.

11. Class 4 consists of the Interests of shareholders. The Plan provides that the Interests of shareholders shall be cancelled and that shareholders shall receive nothing. Class 4 is impaired and deemed to have voted to reject the plan.

12. Class 5 consists of the Allowed Unsecured Claims held by the MLG group. The Plan contains a settlement between the Plan Proponents and the MLG group which resolves years of litigation. The Court has considered the proposed settlement contained in the Plan and finds that the settlement is in the best interests of the estate and should be approved. Moreover, Class 5 is impaired and has voted to accept the Plan.

13. The following objections to confirmation were filed:

    a. <u>Doc. #248,249 filed by Harris County, City of Houston and HISD</u>. The basis for the objection was the claims are small and should be paid in cash rather than over time. The Plan Proponents agree to this treatment and will pay these claims in full on the Effective Date.

    b. <u>Doc. #250 filed by the United States of America on behalf of the Bureau of Indian Affairs ("BIA")</u> The objection has been resolved and the claim for plugging and abandonment filed by the BIA will be withdrawn in view of the following: (i) the Debtor has a bond; (ii) the Debtor agrees to comply with the provisions of 25 C.F.R. §211.23; (iii) the Debtor's agreement to escrow funds for plugging and abandonment costs as

    provided for in the Plan Modifications;(iv) the Debtor's acknowledgment as set forth in paragraph 40 of this Order that environmental liabilities are being excluded from discharge; and (v) the Debtor does not seek discharge of liabilities for plugging and abandonment of wells it operates.

c. <u>Doc. 252 filed by Douglas S. Draper</u>. The basis for this objection is that the Plan discriminates unfairly because it provide a lien to secure payments due certain professionals for Allowed Administrative Expense Claims, but not to others. The objection is mistaken. Section 4.4 of the Plan provides for payment in full of all Allowed Administrative Claims. A lien is granted only to those Holders of Administrative Claims who agree to a different treatment. Thus, the plan complies with 11 U.S.C. §1129(a)(9)(A) and does not unfairly discriminate. Hence, the objection is overruled.

d. <u>Doc. 253 filed by the Official Committee of Unsecured Creditors</u>. The first objection is that the Plan does not name the Disbursing Agent. The Plan Proponents have resolved this objection by agreeing to name Michael Luttrell, CPA as the Disbursing Agent. The second objection is that the Plan is not feasible because it does not disclose the terms of the $350,000 loan to be made by McElvenny to fund payments required by the Plan. McElvenny has agreed to resolve this objection by agreeing to add the $350,000 to the existing DIP Financing.

e. <u>Doc. 254 filed by the Natural Gas Fuel Company ("NGFC")</u>. NFGC withdrew its objection at the confirmation hearing.

f. <u>Doc. #208, 243 filed by two individual shareholders.</u> These shareholders did not appear at the hearing and their objections were therefore denied for want of prosecution.

g. <u>Doc. 265 filed by Energen</u>. Various disputes arose between the Debtor and Energen concerning the amount, priority and security of Energen's claims and provisions for plugging and abandonment. The Debtor and Energen have settled these disputes. The settlement is embodied in the terms of the Plan Modifications. The Court has considered the proposed settlement contained in the Plan Modifications and finds that the settlement is in the best interests of the estate and should be approved. Moreover, Energen has voted to accept the Plan. The Court finds that Energen's objection is resolved by the Plan Modifications.

14. The Court finds that the Debtor has satisfied all applicable provisions of 11 U.S.C. §1129(a).

15. The Court finds that the Debtor is the owner and operator of the wells contained on the lands of the Jicarilla Apache Nation located in the State of New Mexico which are subject of agreements being assumed pursuant to the terms of the Plan.

16. The Court finds that the Plan, the Modification and Amended Modification do not discriminate unfairly with respect to each class of claims and interests.

17. The Court finds that the Plan, the Modification and Amended Modification are fair and equitable as to Class 4 in that no claim or interest junior to the interests of such class will receive or retain any property under the Plan.

18. Thus, the Court concludes that the Plan, the Modification and Amended Modification satisfy the requirements of 11 U.S.C. §1129(b).

### III. Order

It is therefore **ORDERED** that:

19. The above findings are incorporated herein and made the order of the Court.

20. The terms of the Plan, as modified by the Modifications, are appropriate and approved, as provided for herein.

21. All creditors and interest holders who have previously accepted the Plan are hereby deemed to have accepted the Modifications.

22. The time limits provided for in the Plan and Modifications are appropriate and approved.

23. The Plan, as modified by the Modifications, is confirmed. A copy of the Plan is attached hereto as Exhibit "A" and a copy of the Modification is attached hereto as Exhibit "B". A copy of the Amended Modification is attached as Exhibit "C". A copy of the Plan with the Modification redlined is attached as Exhibit "D". Hereafter, the Plan and the Modifications are collectively referred to as the "Plan".

24. Pursuant to Article 5.1 of the Plan, any holder of an Administrative Claim against the Debtor, except the U.S. Trustee with respect to quarterly fees and for expenses incurred in the ordinary course of operating the Debtor's business, shall file proof of such Claim or application for payment of such Administrative Claim on or within thirty (30) days after the Confirmation Date, with actual service upon counsel for the Debtor or such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim be entitled to no distribution and no further notices. All pre-confirmation U.S. Trustee fees due as of the Effective Date, shall be paid when due or on the Effective Date.

25. Except as provided otherwise in the Plan, and subject only to the occurrence of the Effective Date of the Plan, the Debtor is hereby discharged from all debts as provided in the Bankruptcy Code and by this Order.

26. Subject only to the occurrence of the Effective Date of the Plan, any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the Debtor with respect to any debt discharged hereunder is hereby rendered null and void.

27. Except as otherwise provided in the Plan, and subject only to the occurrence of the Effective Date of the Plan, all property of the Debtor's estate and all other property dealt

with by the Plan owned by the Debtor is vested in the Debtor free and clear of all claims and interest of creditors of the Debtor.

28. Except as provided in the Plan or this Order, as of the Confirmation Date, all entities which have held, currently hold or may hold a claim or other debt or liability that is discharged are permanently enjoined from taking any of the following actions on account of such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing in any manner, any action or other proceeding against the Debtor or its properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or other award against the Debtor or its properties; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or its properties; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its properties; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the Plan.

29. All rights of the holders of claims or interests of all classes under the Plan, including, without limitation, the right to receive distributions on account of such Claims or interests, shall hereinafter be limited solely to the right to receive such distributions exclusively as provided in the Plan, and, to the extent applicable, the provisions of this Order. After the date hereof, the holders of such claims or interests shall have no other or further rights against the Debtor except as provided for in the Plan and this Order.

30. As part of the settlement provided for in Section 7 of the Plan, on the Effective Date, the Debtor, McElvenny, other Plan Proponents, and MLG shall be forever released and discharged from any and all claims, actions, suits, debts, accounts, Causes of Action,

agreements, promises, damages, judgments, demands and liabilities which any of them, the Debtor or Creditors and Persons receiving or who are entitled to receive distributions under the Plan may have against them in any way related to the Debtor (including its predecessors or Affiliates) or this Case, except for obligations maintained between the Debtor and MLG by the Settlement referred to in Article 7 of the Plan. Any liability to MLG from GOCO or any third party is limited to prepetition royalty payments and prepetition state taxes as set forth above as well as in the Plan and the settlement. These claims shall be non-recourse to MLG except as against right, title and interest to post June 30, 2004 revenues associated with the operation of rights, title and interest in Section 71 and Section 363 Leases. MLG shall release GOCO from any and all liabilities or claims, including those relating to wells located on the Section 71 Lease. MLG shall dismiss with prejudice the pending action in the First Judicial District Court in the State of New Mexico, including counter claims and third-party claims. MLG shall be allowed to request assistance of this Court to finalize, effectuate or obtain approval of any assignments or transfers required by the Plan or settlement. Approval of assignment or transfer shall not be unreasonably withheld by any Creditor or third party. On the later of the Effective Date or June 30, 2004, all rights, title and interest in the Section 71 and Section 363 leases (except for five wells on the 71 lease being worked-over, which will be transferred after collecting allowable charges for work over), shall be transferred to MLG. If the transfer cannot legally take place on the later of the Effective Date or June 30, 2004, then MLG shall be entitled to a transfer of all equitable interests in and to the Section 71 and Section 363 Leases (except for five wells on the 71 lease being worked-over, which will be transferred after collecting allowable charges for work over). This equitable transfer shall mean that MLG shall have the

rights to all income produced from said Leases net of any current royalties and taxes and the proportionate share of past due royalties payable under this Plan as well as Lease operating expense, equal to direct well expenses paid to third parties and a $300 per operating well operational fee.

31. As part of the settlement provided for in Amended Plan Modifications, on the Effective Date, the Debtor, McElvenny, other Plan Proponents, and Energen shall forever release and discharge each other from any and all claims, actions, suits, debts, accounts, Causes of Action, agreements, promises, damages, judgments, demands and liabilities which any of them may have in any way related to the Debtor (including its predecessors or Affiliates) or this Case, except for obligations maintained between the Debtor and Energen by the Settlement referred to in the Modifications. Additionally, the Court finds the Plan shall constitute a motion to compromise under Fed. R. Bankr. P. 9019 and that sufficient notice of the proposed compromises contained in the Plan has been provided. Accordingly, the Court approves the Plan as modified. All interested parties or creditors shall be entitled to request assistance of this Court to finalize, effectuate or obtain approval of any elements of the Plan or compromises.

32. On the Effective date, the Partnerships will be dissolved and each limited partner who has paid all capital contributions or working interests assessed by the Debtor or reorganized Debtor (or commenced timely arbitration in lieu of payment) shall receive a working interest in each well equal to their respective share of the partnership's interest. As a term of the compromise between MLG and GOCO, all of the Partnerships having any interest in the Section 71 and 363 Leases shall be dissolved. GOCO, as the general partner of each Partnership, may require its limited partners to contribute capital. GOCO billed limited partners, but they have

failed to pay. Under the terms of the relevant Partnership Agreements and Operating Agreements, those partnership or working interests are terminated and relinquished to GOCO after nonpayment. Under paragraph 6.3 of the Plan, the partnership interest or working interests unpaid after demand are deemed to be property of the Reorganized Debtor, under the procedures set forth therein, in accordance with applicable law and the terms of the working interest.

33. The Debtor is authorized to execute all documents under the confirmed Plan as may be necessary, required, or appropriate to carry out the provisions of the confirmed Plan including the documents necessary to effectuate the transfer of legal title of assets under the 1991 asset purchase agreement between Chace and the Debtor, specifically including forms required by the Jicarilla Apache Nation, and the documents necessary to transfer assets to the MLG group in accordance with Article 7 of the Plan.

34. Pursuant to 11. U.S.C. § 1141(a), the provisions of the Plan are binding on all parties, including, but not limited to, creditors and equity security holders of the Debtor whether or not any such creditors or equity holders have accepted the Plan.

35. The duties of the Official Committee of Unsecured Creditors and their professionals shall terminate on the Effective Date.

36. Mr. Michael Luttrell, C.P.A. is hereby appointed as the Disbursing Agent commencing on the Effective Date. The Disbursing Agent and his agents shall not be liable in any event for actions as Disbursing Agent, except for gross negligence or willful default or misconduct.

37. On the Effective Date, the following individuals and entities shall be forever released and discharged from any and all claims, actions, suits, debts, accounts, causes of action,

agreements, promises, damages, judgments, demands and liabilities which the Debtor or Creditors and Persons receiving or who are entitled to receive distributions under the Plan may have against them in any way related to the Debtor (including its predecessors or Affiliates) or this Case: (i) the Debtor, and (ii) all directors, officers, associates, employees, members, partners, professionals or agents of the Debtor who served the Debtor on or after the Petition Date, and (iii) McElvenny and any of his affiliates or associates and all directors, officers, managers, partners, employees, professionals or agents of the Plan Proponents or such affiliates or associates of the foregoing (in clauses (i) and/or (ii)) in any capacity whatsoever. The Jicarilla Release provided for in Section 14.3 is hereby deleted.

38. McElvenny and their Affiliates are hereby released and forever discharged from any Claims or causes of action relating to the Debtor, the estate or this case that could be asserted by or on behalf of Holders of a Claim against or an Interest in the Debtor or its Affiliates (including entities of which the Debtor holds any Interest or is General Partner).

39. Pursuant to 11 U.S.C. § 1141(d)(1)(B), upon the Effective Date, the rights of all Interest Holders are terminated.

40. Except as set forth in paragraph 38 hereof, notwithstanding any provision to the contrary in the Plan or this Order, nothing in the Plan or this Order: (1) limits the ability of any governmental environmental agency to seek or to enforce any injunctive relief, or to impose penalties against the Reorganized Debtor, for post-Confirmation Date violations of any environmental statute, rule, or other law, committed by the Reorganized Debtor; (2) limits the ability of any governmental environmental regulatory agency to require the Reorganized Debtor to perform remediation or cleanup of contamination of hazardous waste, if any, on real property

owned or operated by the Reorganized Debtor after the Confirmation Date; or (3) limits the ability of any governmental environmental regulatory agency to impose a fine or penalty on the Reorganized Debtor for violations of existing environmental statutes, rules, or other laws, if any, that either initially occur subsequent to the Confirmation Date or are related to pre-Confirmation Date violations, but only with respect to such violations that continue subsequent to the Confirmation Date. The Reorganized Debtor shall not be precluded from defending any enforcement, fine, penalty or injunctive relief sought by such agencies.

41. No provision of the Plan or this Order shall operate, or be deemed to apply to NGFC, to limit, release, discharge or otherwise affect the claims, causes of action, counterclaims, defenses or other rights of NGFC against any party, specifically including section 14.4, 17.11.2, and 17.12, except that if NGFC is granted an Allowed Claim in this case, such Allowed Claim shall be paid in accordance with the terms of the Plan.

42. The failure specifically to include any particular provisions of the Plan in this Order shall not diminish or impair the efficiency of such provision, it being the intent of the Court that the Plan be authorized and approved in its entirety.

43. After the entry of this Order, pleadings shall only be served upon the United States Trustee, and any party directly affected by the pleading and its counsel, if known (i.e, claims objections need only be served upon the person who filed the claim that is subject to the objection, its counsel, if known, and the United States Trustee).

44. To the extent that objections to the Plan are not specifically sustained herein, they are overruled and denied.

45. <u>THIS IS A FINAL ORDER.</u>

46. This Court retains jurisdiction (i) to enforce and implement the terms and provisions of the Plan and this Order, all amendments thereto, any waivers and consents herein provided, and any agreements executed in connection herewith, (ii) to compel delivery of the Transferred Assets to the Purchaser, (iii) to resolve any disputes arising under or related to this Order or the Plan, and (iv) to interpret, implement and enforce the provisions of this Order.

47. To the extent the terms of the Plan and this Order conflict, the terms of this Order shall govern.

Dated: Oct. 6, 2004

*Wesley W. Steen*
UNITED STATES BANKRUPTCY JUDGE