UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. **03-36974-H2-11** |
| **Golden Oil Company** | § | CHAPTER 11 |
| *a Delaware Corporation* | § | |
| | § | |
| DEBTOR | § | |

## THIRD AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION
### FILED BY DEBTOR GOLDEN OIL COMPANY
### AND RALPH T. MCELVENNY, AEROPANEL CORPORATION, INC.,
### AND INSTRUMENT SPECIALTIES COMPANY

In accordance with 11 U.S.C. §1121 and §1106, Debtor Golden Oil Company (hereinafter "GOCO" or "Debtor") Ralph T. McElvenny, AeroPanel Corporation, and Instrument Specialties Company, Inc., file this Third Amended and Restated Joint Plan of Reorganization as follows:

## 1. DEFINITIONS

For purposes of this Plan of Reorganization, the following terms and definitions shall have the following meanings unless the context clearly indicates otherwise:

1.1. **"Administrative Expenses"** shall mean those expenses described in §503 of the Bankruptcy Code.

1.2. **"Allowed"**, when used with respect to any Claim or Interest, means the Claim or Interest or applicable portion thereof that has been allowed pursuant to 11 U.S.C. § 502, and, if the Claim or Interest was objected to, means that a Final Order has been entered allowing the Claim or Interest pursuant to Code § 502. Unless otherwise specified, the term Allowed does not include (i) interest on the amount of such Claim accruing from and after the Petition Date, (ii) fees and costs incurred from and after the Petition Date, (iii) punitive or exemplary damages, (iv) estimated or protective claims or (v) any fine, penalty or forfeiture.

1.3. **"Allowed Unsecured Claim"** means an allowed claim that is not an Administrative Claim, a Secured Claim, or a Priority Claim.

1.4. **"Bankruptcy Code"** shall mean the Bankruptcy Code, 11 U.S.C. §101 et seq., and any amendments thereof

1.5. **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in which the Debtor's Chapter 11


EXHIBIT
A

case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

1.6. **"Bankruptcy Rules"** shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court

1.7. **"Bar Date"** shall mean October 6, 2003, the deadline established by the Bankruptcy Court for the filing of Claims pursuant to Bankruptcy Rule 3003.

1.8. **"Claim"** shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured disputed, undisputed, legal, secured or unsecured.

1.9. **"Class"** shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Section 3.

1.10. **"Committee"** shall mean the Official Unsecured Creditors Committee appointed by the Court in the case.

1.11. **"Confirmation Date"** shall mean the date upon which the Order of Confirmation is entered by the Clerk of the Bankruptcy Court.

1.12. **"Contested,"** or **"Disputed"** when used with respect to a Claim, means a Claim against the Debtor (i) that is listed in the Debtor's Schedules as disputed, contingent or unliquidated regardless of whether a proof of claim has been filed or not; (ii) that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (iii) that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been filed.

1.13. **"Court"** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

1.14. **"Creditors"** shall mean all creditors of the Debtor holding claims for debts, liabilities, or demands of any character whatsoever, as defined in §101(10) of the Bankruptcy Code.

1.15. **"Debtor"** shall mean Golden Oil Company.

1.16. **"DIP Financing"** shall mean any and all post-petition loans made pursuant to the terms of an order entered pursuant to 11 U.S.C. § 364.

1.17. **"Disclosure Statement"** shall mean the written document filed by the Debtor in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

1.18.  **"Disbursing Agent"** means the individual designated, prior to the confirmation date, to distribute funds from the Disbursement Account and exercise certain other rights designated in Section 6.1.

1.19.  **"Disbursement Account"** shall maintain the account in a federally insured bank approved by the United States Trustee into which the Reorganized Debtor pays the amounts necessary to satisfy the Allowed Claims being paid according to the treatment for that Allowed Claim.

1.20.  **"Effective Date"**  means the later of the eleventh day after the Confirmation Date, calculated in accordance with Bankruptcy Rule 9006, unless the Confirmation has been stayed or any of the other conditions set forth in Section 11.4 of this Plan have not been met, in which event it is the first day after such stay is no longer in effect or such conditions have been met (that is also eleven days after the Confirmation Date) calculated in accordance with Bankruptcy Rule 9006, or such later date as the Debtor and McElvenny shall unanimously agree to in writing. shall mean  the date the Order Confirming Plan becomes a Final Order .

1.21.  **"Estimated Claim"** means any claim that is filed as an estimate or to protect potential future injury or that is based on estimation of past-due taxes or royalties.

1.22.  **"Filing Date"** shall mean May 12, 2003, the date the Debtor filed its petition under Chapter 11 of the Bankruptcy Code.

1.23.  **"Final Order"** shall mean an order or judgment of a Court that has become final in accordance with law, and has not been stayed pending appeal.

1.24.  **"Insider"** shall have that meaning defined by 11 U.S.C.§ 101(31).

1.25.  **"General Unsecured Claim"** shall mean either  (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code or (ii) a Claim that is secured in one of the foregoing manners to the extent the amount of the Claim exceeds the value of the property securing the Claim.

1 26.  **"GOCO"** shall mean Debtor or Golden Oil Company.

1.27.  **"Holder"** shall mean the owner or holder of any Claim or Interest.

1.28.  **"Interest"** shall mean an interest or equity interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

1.29.  **"McElvenny"** shall mean Ralph T. McElvenny and AeroPanel Corporation, and Instrument Specialties Company, Inc.

1.30.  **"MLG"** means and includes all persons including individuals, corporations, partners and other interest owners represented by the law firm of Dolan & Domenici, PC as detailed in their letter of representation sent to GOCO dated

February 6, 2004 attached, both individually and in any and all other capacities, including as former or current officers, directors, joint venturers, shareholders or control persons (within the meaning of the Federal Securities Acts), of Chace Oil Company, Ltd., Golden Oil Company, Cobb Resources Corporation or Hydro Resources Corporation (inclusive of all entities referenced above).    The list of people who are members of the MLG are available from their counsel, Pete Domenici, Jr. by written request.

1.31.    "**Order Confirming Plan**" shall mean the Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to an entry of an order of confirmation.

1.32.    "**Overriding Royalty Owner Claim**" shall mean a Claim that represents unpaid pre-petition royalties owed by the Debtor to owners of an overriding royalty interest in oil and gas wells previously operated by the Debtor.

1.33.    "**Partnerships**" - Shall include partnerships holding working interests of wells in New Mexico or Apache lands, of which GOCO is a general partner, as successor general partner to Chace Oil Company, including specifically partnerships named and numbered "Chace Limited I" through and including those numbered "Chace Limited XXV", created at various times between 1979 and 1990.

1.34.    "**Penalty Claim**" shall mean a Claim for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages arising before the order for relief in the case, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim.

1.35.    "**Plan**" shall mean this Joint Plan of Reorganization in its present form, or as it may be amended or supplemented from time to time.

1.36.    "**Pre-Petition Accounts**" shall mean the account billings owed to the Debtor on the May 12, 2003.

1.37.    "**Priority Claim**" means those Allowed Claims which are entitled to the priority provided for under §507(a) of the Bankruptcy Code.

1.38.    "**Proponents**" shall mean the Debtor and McElvenny.

1.39.    "**Pro Rata** " shall mean the amount which is the result of multiplying the funds available to a named Class of Creditors by the fraction in  which the numerator is the allowed amount of a particular Claim in the named Class,  and the denominator is a total of the allowed amounts of all Claims of the named Class, to be recalculated at the time of each  disbursement.

1.40.    "**Reorganized Debtor**" shall mean the Debtor after the entry of Order Confirming Plan.

1.41.    "**Secured Claim**" shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, of a value determined in accordance with 11 U.S.C.§506(a), or as may otherwise be determined in the course of Claim allowance under this Plan or the Bankruptcy

Rules and law, or which is subject to setoff under 11 U.S.C. § 553 to the extent of the amount subject to setoff.

1.42. **"Secured Tax Claim"** shall mean a claim described in 11 U.S.C.§507(a)(8) together with all accrued interest and penalties, which is also a Secured Claim.

1.43. **"Settlement Agreement"** means the agreement between MLG and the Debtor and McElvenny regarding the compromise and release of causes of action between them, signed on or about March 17, 2004, and any successor agreement.

1.44. **"Substantial Consummation"** shall occur on the Effective Date.

1.45. **"Trade Creditor"** is a creditor **owed less than $45,000??** who provided prepetition goods or services to the Debtor in the ordinary course of its business, but does not include counsel.

1.46. **"Working Interest Owner Claim"** shall mean a Claim that represents unpaid pre-petition revenues owed by the Debtor to owner's of a working interest in oil and gas wells operated by the Debtor. This also includes persons who formed joint ventures with the Debtor to develop or receive production from an oil or gas well.

A term in this Plan not otherwise defined herein but used in the Bankruptcy Code shall have the definition assigned to such term in the Bankruptcy Code

## 2. GENERAL TERMS AND CONDITIONS

2.1. The following general terms and conditions apply to this Plan:

2.2. Various types of claims are defined in this Plan. This Plan is intended to deal with all claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to §502(a) of the Bankruptcy Code. However, only those claims allowed pursuant to §502(a) of the Bankruptcy Code will receive distributions of money.

## 3. CLASSIFICATION OF CLAIMS

The following is a designation of classes of claims and interest. Administrative Expense claims are excluded from the following classes in accordance with Bankruptcy Code §1123(a)(1).

3.1. **Class 1 – Priority Claims**

3.1.1. **Class 1a** -Class 1a consists of the Priority Claims of the **Internal Revenue Service**.

3.1.2. **Class 1b** -Class 1b consists of all the Priority Tax Claims of **state and local taxing authorities**, not treated elsewhere in this Plan.

3.1.3. **Class 1c** -Class 1c consists of all the Secured Tax Claims of **state and local taxing authorities**.

3 1.4. **Class 1d** -Class 1d consists of all non-tax Priority Claims not treated elsewhere in the Plan, if any.

3.2. **Class 2 - Secured Claims**.

    3.2.1. **Class 2a** - Class 2 consists of the **Allowed Secured Claim of McElvenny,** secured by the virtually all of the assets of the Debtor, including accounts, equipment, fixtures and furniture further described in particular in the agreements between the Debtor and McElvenny and McElvenny's Claims arising out of the provision of Debtor in Possession ("DIP") financing.

    3.2.2. **New Mexico Secured claim** – Consists of the secured Proof of Claim filed by the State of New Mexico, portions of which are unsecured.

    3.2.3. **Class 2b** - Consists of all other Allowed Secured Claims

3.3. **Class 3 - Unsecured Claims**.

    3.3.1. **Class 3a** consists of all **Allowed Unsecured Claims** of GOCO not treated elsewhere in the Plan and the interests of Limtied Partnerships of which the Debtor is General Partner

    3.3.2. **Class 3b** - consists of all **Allowed Unsecured Claims of Working Interests or Joint Venture Holders,**.

    3.3.3. **Class 3c** - consists of all **Allowed Unsecured Claims of Overriding Royalty Owners**.

    3.3.4. **Class 3d** - Consists of all Trade Creditor Claims, totaling, in the aggregate, less than $75,000.

3.4. **Class 4 -- Equity**

    3.4.1. **Class 4** -Class 4 consists of all Interest Holders of the Debtor.

3.5. **Class 5 – MLG**

    3.5.1. **The MLG** consists of the individuals and entities represented by Pete Domenici, Jr., which list may be obtained from him by requesting the same, in writing. The MLG has entered into an agreement to be treated as Class 3 Unsecured creditors, but to receive different treatment as the result of a settlement agreement between them and the Debtor.

## 4.   TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

### 4.1.   Bar Date for Requests For Payment of an Administrative Expense.

All requests for payment of an Administrative Expense Claim not covered by previous bar dates, except post-petition extensions of trade credit for goods or services and quarterly U.S. Trustee fees, shall be filed with the Court no later than thirty (30) days after the Effective Date or be forever barred. Within five (5) days after the Effective Date, the debtor shall serve notice of such Administrative Expense bar date on all known parties asserting Administrative Expense Claims except for Professionals.

### 4.2.   Deadline for Objections.

All objections to allowance of Administrative Expense Claims must be filed by any parties in interest within seventy (70) days after the Administrative Expense Claim bar date. If no objection to the applicable Administrative Expense Claim is filed on or before that date, such Administrative Expense Claim shall be deemed Allowed as of that date.

### 4.3.   U.S. Trustee Fees.

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases shall be paid by the Disbursing Agent with money from the Reorganized Debtor.

### 4.4.   Administrative Claims

Each Holder of an Allowed Administrative Claim shall receive without interest on the later of the Effective Date or approval by the Court of such Claim, the amount of such Claim, unless such Holders have agreed to a different treatment of such claim. In the event that the Holder of an Administrative Claim agrees to an alternative treatment the Debtor hereby grants a security interest in the Reorganized Debtor's assets to ensure payment. Payments for Administrative Claims that become an Allowed Administrative Claim on or after the Effective Date shall be paid by the Reorganized Debtor.

## 5.   TREATMENT OF CLAIMS AND INTERESTS

### 5.1.   Class 1 – Priority Tax Claims

Priority Tax Claims are Claims asserted by governmental units entitled to priority under Bankruptcy Code § 507(a)(8). The Bankruptcy Code does not require Priority Tax Claims to be classified under a plan, but requires that such claims receive the treatment described below unless the holder of such Claim consents to different treatment.

> 5.1.1.   Any holder of an Allowed Priority Tax Claim shall receive at the Debtor's option (and with the consent of Mr. McElvenny) (i) the amount of the Allowed Priority Tax Claim in one cash payment on or immediately after the Effective Date or (ii) the amount of the Allowed Priority Tax Claim, with interest at 6% simple interest per annum or such other rate to be

determined by the Court at the hearing on Confirmation of the Plan, in equal annual Cash Payments on each anniversary of the Effective Date, until the last anniversary of the Effective Date that precedes the sixth anniversary date of the date of assessment of the Allowed Priority Tax Claim.

5.1.2.  A Priority Tax Claim that is a Contested Claim shall not receive any distribution on the Effective Date or thereafter unless and until such Claim becomes an Allowed Priority Tax Claim. Allowed Secured Claims for taxes will be satisfied first as non-classified Priority Tax Claims to the extent they qualify as Priority Tax Claims, but shall retain any collateral for such Claim until the Priority Tax Claim is paid in full. To the extent that some or all of an Allowed Secured Claim for taxes does not qualify as a Priority Tax Claim, but is a valid Allowed Secured Claim, it will be classified as a Secured Tax Claim.

## 5.2.  Class 2 Secured Claims

5.2.1.  **McElvenny**. The Holder of the Class 2a Secured Claim shall receive one hundred percent of the Debtor's newly issued common stock in exchange for 40% percent of his Allowed Secured Claim, up to a maximum amount of $400,000. The balance of the Class 2a Allowed Secured Claim shall be paid from the proceeds, if any, of litigation claims held by the Debtor while Class 3 Claim remains unpaid.  The Holder of the Class 2a Secured Claim shall retain the lien that existed prior to bankruptcy and increase the claim by the amount of attorney's fees expended by McElvenny in this Case; however, the Holder of the Class 2a Claim agrees to subordinate his right to receive payment to the  extent necessary to pay the Holders of Allowed Class 3 Claims as set forth herein.  The Class 2a Claim is **impaired** under the Plan and therefore is entitled to vote.

### 5.2.2.  State of New Mexico Secured Claim

Any and all valid liens held by the State of New Mexico perfected before bankruptcy will remain in full force and effect with the same priority as existed on the Filing Date until its secured obligation has been paid in accordance with the Plan.    This Claim will be satisfied as set forth in paragraph 5.1.

## 5.3.  Class 3 – Unsecured Claims

5.3.1.  Holders of Allowed Class 3 Claims shall be paid in full over 6 years, with simple interest at 6% per annum. These payments shall be made quarterly, in 24 equal installments of 4.166% of the Allowed Claim and interest. These cash payments begin on the first day of the first calendar quarter following thirty (30) days after the Effective Date.  Payments will be made by the Reorganized Debtor to the Disbursing Agent, who will make payments from the Disbursement Account.  Claims allowed after the Effective Date will be paid as if the date the claim was allowed was the

Effective Date, except that the interest will accumulate from the Effective Date.   All Class 3 claims are **impaired** and entitled to vote.

5.3.2.   **Class 3a Claims** – Holders of Class 3a Claims shall be paid in accordance with the above paragraph unless another agreement is reached regarding that Claim.

5.3.3.   **Class 3b Claim Election** -- The Holders of Class 3b Claims (Working Interest Owners and Joint venture Owners) may elect to be paid in full satisfaction of their claim, cash, on the Effective Date in the amount of 40% of their Allowed Claim.   This election must be made before the Voting Deadline for Plan Confirmation.   The Election may be included in the Plan Ballot, or by other notice filed with the court and sent to the Debtor and Mr. McElvenny.

5.3.4.   **Class 3c Claim Election** -- The members of Class 3c may elect to be paid in full satisfaction of their claim, cash, on the Effective Date in the amount of 50% of their Allowed Claim (up to the aggregate total of $150,000), with any unpaid remainder of the reduced amount paid in accordance with the provisions of paragraph 5.3.1.   This election must be made before the Voting Deadline for Plan Confirmation.   The Election may be included in the Plan Ballot, or by other notice filed with the court and sent to the Debtor and Mr. McElvenny.

5.3.5.   **Class 3d Allowed Claims** -- Each Holder of an Allowed Class 3d Claim shall receive without interest on the later of the Effective Date or approval by the Court of such Claim, an amount equal to 75% of the principal amount of their Allowed Claim, unless the Holder agrees to a different treatment of such claim.

5.4.   **Class 4 – Equity**

5.4.1.   **Class 4 -** shall receive no dividend and all such equity shall be cancelled on Effective Date.   Class 4 claims are **impaired** under the Plan and since they are not receiving any distribution they are deemed to have rejected the Plan.

5.5.   **Class 5 -- MLG**

5.5.1.   **MLG** shall receive the benefit of the Settlement Agreement, the respective interests in the 71 and 363 leases described therein, and the liabilities associated therewith.   However, MLG members shall not receive distributions under any other class.

## 6.    MEANS OF PLAN EXECUTION

*Disbursing Agent* –

6.1.    **Formation**

6.1.1.    The Debtor shall designate an individual (who may be an employee of the Debtor) to be the Debtor's Disbursing Agent.

6.1.2.    The Disbursing Agent has authority to open and operate the Disbursement Account.

6.2.    **Distribution**

6.2.1.    As soon as feasible after the Effective Date, the provisions of the Plan providing for distribution shall become the responsibility of the Disbursing Agent, who shall make such disbursements as required by the Plan.

6.2.2.    The Disbursing Agent shall keep such records of disbursements as required under generally accepted accounting procedures and make such records available to claimants from time to time upon reasonable notice until all Allowed Claims are paid in accordance herewith.

6.2.3.    The Disbursing Agent may suspend distribution to any Creditor that has not provided it and the Debtor with its Federal Tax Identification Number or social security number, as the case may be. No funds need be set aside by the Disbursing Agent for any such person.

6.2.4.    Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the first anniversary of the Effective Date. After such date, all Claims in respect of void checks shall be discharged and forever barred.

6.3.    **Collection of Receivables From Working Interest Holders**  The Debtor is owed money from certain Joint Venture Interest Holders, Working Interest Owners, and/or Limited Partners of Partnerships, among others.

6.3.1.    The Reorganized Debtor will make demand upon persons holding Joint Venture Interests and Working Interests (including those who owe money to the Debtor or to a Partnership).

6.3.2.    In cases of working interests created by the dissolution of the Partnerships as set forth in paragraph 8.1, if the limited partner has not paid within 30 days of demand (by the Reorganized Debtor or the Debtor), the Reorganized Debtor or Debtor may take whatever action is necessary to obtain the working interest in accordance with the operating agreement and applicable law.

**6.3.3.** For Joint Venture and Working Interest Owners, if the Reorganized Debtor remains unpaid 30 days after demand, the Reorganized Debtor or Debtor may, in its sole discretion, either i) institute legal action in the Bankruptcy Court to determine and collect on the liability, or ii) take whatever action is necessary to obtain the working interest in accordance with the operating agreement and applicable law.

**6.3.4.** Demand and notice for purposes of this Section 6.3 will be considered made when mailed by first-class mail to the last known address of the interest owner or, if the interest owner has filed a proof of claim, by mailing notice of demand or notice to the address on the proof of claim. Request for payment of authorized expenditures or joint interest billings constitutes proper Demand.

6.4.　**Vesting of Property of the Estate in Reorganized Debtor**. On the Effective Date of the Plan, all property of the Debtor and of the Estate shall vest in the Reorganized Debtor free and clear of liens, claims and encumbrances, except as otherwise provided in the provisions of this Plan.

6.5.　**Continuation of Business Operations.** From and after the Effective Date of the Plan, the Reorganized Debtor is authorized to continue its normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan. The Reorganized Debtor may compromise any claim without motion or court approval under Bankruptcy Rule 9019.

6.6.　**Directors and Officers of Reorganized Debtor**. The Directors and Officers of the Debtor are authorized to continue as Directors and Officers of the Reorganized Debtor from and after the Effective Date of the Plan. However, the Board of Directors may not raise the salary of Mr. McElvenny above a Cost of Living Adjustment equal to the change in the Consumer Price Index until 80% of the Class 3 Allowed Claims are satisfied.

6.7.　**Payments to and From the Disbursing Agent**. The Disbursing Agent and the Debtor shall agree on the amount of Allowed Claims being paid at each regularly quarterly payment at least 15 days before the end of the quarter. In the event they do not agree, the Debtor may apply to the court for an adjudication of the amount owed and pay only the amount required by the Court to the Disbursing Agent. The Debtor shall pay the Disbursing Agent an amount equal to the percentage of the Allowed Claims being paid by that Agent in the regularly quarterly payment, at least 7 days before the end of the quarter. The Disbursing Agent shall maintain the Disbursement Account. Only the Disbursing Agent will have signatory authority over the Account. All monies remaining in the fund, if any, after Class 3 Allowed Claims are satisfied shall be returned to the Reorganized Debtor. Upon payment of all Allowed Claims, the Disbursing Agent's duties shall be discharged and the Disbursing Agent shall cease to act for the estate or its creditors.

6.8. **Source of funds for Payments due on the Effective Date.** The current operational revenues of GOCO and collection of receivables will be used to pay Administrative claims as required by the Plan. To the extent that GOCO lacks sufficient funds to make payments, and that payment is needed to effectuate the Plan, McElvenny will forward money on the Debtor's behalf as a loan to be secured by all of the Debtor's assets and to be repaid only after all allowed Class 3 claims are satisfied. McElvenny has committed to loan $350,000.

6.9. **New Common Stock.** The Debtor will issue 1,000 shares of new common stock in satisfaction of 40% percent of the Allowed Class 2a Secured Claim, up to $400,000.

6.10. **Restated Articles of Incorporation and Bylaws** At the Debtor's option, the Debtor's Bylaws and Articles of incorporation may be modified to prohibit the issuance of non-voting equity security to the extent required by Code § 1123(a)(6) and such other modifications as may be approved in the Confirmation Order ("Restated Articles of Incorporation" and "Restated By-Laws"). Such documents will provide for a ratification and confirmation of Agreements of post-petition directors and officers of the Debtor for reasonable director and officer insurance.

6.11. **Consolidation of GOHC and GOCO.** On the effective date, all assets and liabilities of GOCO and GOHC shall merge, and any intercompany liabilities shall be forgiven, unless otherwise specified. GOCO and GOHC will be authorized to execute whatever documents are needed to consolidate the two.

6.12. **Termination of Unsecured Creditors Committee** On the Effective Date the Official Committee of Unsecured Creditors ends.

7. **COMPROMISE WITH MLG**

7.1. **Compromise Terms** The Debtor's compromise with MLG is approved upon entry of the final order confirming this Plan. The compromise with MLG is complex, however its general terms are that the Debtor will convey both the assets and the limited liabilities (set forth below) relating to working interests in all wells on the 71 and 363 leases (except for five wells on the 71 lease being worked-over, which will be transferred after collecting allowable charges for the workovers), in exchange for a release of MLG's working interest in all other wells, and mutual release of any other liabilities. In regards to the Section 71 Lease, MLG shall obtain all rights, title, interest and ownership in all wells or partnerships owned by partnerships, including all GOCO's Lease and working and operating interests. MLG shall obtain the Section 71 Lease subject only to prepetition royalty payments of $95,958, prepetition state taxes of $27,815, and plug and abandonment liabilities. In regards to the Section 363 Lease, MLG shall obtain all rights, title, interest and ownership in all wells or partnerships owned by partnerships, including all GOCO's Lease and working and operating interests. MLG shall obtain the Section 363 Lease subject only to prepetition royalty payments of $-0-, prepetition state taxes of $-0-, and plug and abandonment

liabilities. Any and all payments due as a result of the limited liabilities assumed by MLG set forth above, shall be paid in full over six (6) years, with simple interest at six percent (6%) per annum. A Creditor may obtain a copy of the Settlement Agreement from counsel for the Plan Proponent. The Settlement Agreement also expresses the position of MLG (Committee Chair) and the Debtor regarding the Allowed Claim of Committee Counsel and seeks to limit and allocate those fees and expenses, when and if allowed. Under the allocation, MLG would pay up to $25,000 of the Allowed Claim, and the Debtor would pay up to $75,000.

7.2. **Authority to Sign Title Transfer Documents on Behalf of Chace.** On the date the Confirmation Order is entered, the Debtor or Reorganized Debtor may sign the documents necessary to effectuate the transfer of assets under the 1991 asset purchase agreement between Chace and the Debtor, specifically including forms required by the Jicarilla Apache Nation, even though Chace Oil Company may no longer exist. The Debtor and Reorganized Debtor shall incur no liability for signing these required forms, or actions taken in reliance thereof.

7.3. **Additional releases.** On the Effective Date, McElvenny, the Debtor and MLG shall be forever released and discharged from any and all claims, actions, suits, debts, accounts, Causes of Action, agreements, promises, damages, judgments, demands and liabilities which any of them, the Debtor or Creditors and Persons receiving or who are entitled to receive distributions under the Plan may have against them in any way related to the Debtor (including its predecessors or Affiliates) or this Case, except for obligations maintained between the Debtor and MLG by the Settlement. Any liability to MLG from GOCO or any third party is limited to prepetition royalty payments and prepetition state taxes as set forth above. These claims shall be non-recourse to MLG except as against right, title and interest to post June 30, 2004 revenues associated with the operation of rights, title and interest in Section 71 and Section 363 Leases.MLG shall release GOGO from any and all liabilities or claims, including those relating to wells located on the Section 71 Lease. Upon execution and approval of the Settlement, MLG shall dismiss with prejudice the pending action in the First Judicial District Court in the State of New Mexico, including counter claims and third-party claims.

7.4. **Relation to other Creditors.** MLG and GOCO shall cooperate to obtain a lease assignment and approval of MLG as operator of the Sections 71 and 363 Leases from the Jicarilla's, and to reduce any and all claims on behalf of MMS, Jicarilla and other governmental agencies against GOCO. NO claims of MMS, Jicarilla or other governmental agencies shall survive against MLG or the MLG interests described in this Section 10.5 except as set forth herein.

8. **DISSOLUTION OF THE PARTNERSHIPS**

8.1. **Dissolution.** On the Effective date, the Partnerships will be dissolved and each limited partner who has paid all capital contributions or working interests assessed by the Debtor or reorganized Debtor (or commenced timely arbitration in lieu of payment) shall receive a working interest in each well equal to their respective

share of the partnership's interest.  As a term of the compromise between MLG and GOCO, all of the Partnerships having any interest in the Section 71 and 363 Leases shall be dissolved.

8.2.    **Termination of Partnership/Working Interest for Nonpayment of Joint Interest Billings.**  GOCO, as the general partner of each Partnership, may require its limited partners to contribute capital.  GOCO billed limited partners, but they have failed to pay.  Under the terms of the relevant Partnership Agreements and Operating Agreements, those partnership or working interests are terminated and relinquished to GOCO after nonpayment.  Under paragraph 6.3 of the Plan, the partnership interest or working interests unpaid after demand are deemed to be property of the Reorganized Debtor, under the procedures set forth therein, in accordance with applicable law and the terms of the working interest.

9.    **EXECUTORY CONTRACTS AND LEASES**

9.1.    **Executory Contracts and Leases to be Assumed.**  The Debtor shall assume pursuant to 11 U.S.C.§365 all oil and gas operating agreements, leases and joint venture agreements and other executory contracts to which the Debtor is a party shown on Exhibit 5.1 of the Disclosure Statement.

9.2.    **Cure of defaults in executory contracts and leases**.  The Debtor shall cure all financial defaults in leases and executory contracts assumed under the Plan to the extent required by 11 U.S.C.§365(b)(1), if any, by paying the amount of any such cure as provided in the plan for a Class 3b Unsecured Claim.  The confirmation of the Plan shall constitute a finding that all defaults in executory contracts and leases to be assumed hereunder have been satisfied.

9.3.    **Leases to be Rejected.**  Executory contracts or leases shown on Exhibit 9.3 to the plan (if any) are rejected.  In addition, all leases and executory contracts not shown on Exhibit 5.1 of the Disclosure Statement and not expressly assumed, assumed and assigned, or cancelled by mutual agreement with the Debtor prior to Confirmation of the Plan shall be deemed rejected.  If the rejection of an executory contract or unexpired lease by the Debtor results in damages to the counterparty to such contract or lease, a Claim for damages shall be forever barred and shall not be enforceable against the Debtor, its successors and assigns or its property, unless a proof of claim is filed with the Court and served in accordance with Section 9.4 of the Plan by thirty (30) days after entry of the Confirmation Order or by such earlier date as may be fixed by an order of the Court authorizing rejection of the contract or lease. Claims for damages from the rejection of any such leases and contracts, if Allowed, shall constitute Class 3a Unsecured Claims entitled to share Pro Rata with other Allowed Class 3a Unsecured Claims.

9.4.    **Service of Rejection Claim**.  Holders of Rejection Damage claims must file a proof of claim for rejection damages and forward a copy of the claim with all supporting documentation via certified mail to the Reorganized Debtor at its address of 2200 Post Oak Boulevard, Suite 720, Houston, Texas 77056; with

another copy sent by certified mail to counsel for McElvenny c/o Ed Rothberg, 11 Greenway Plaza, Suite 1400, Houston Texas 77046

**10.    PROCEDURES FOR RESOLVING AND TREATING DISPUTED AND CONTINGENT CLAIMS**

10.1.    **Objection Deadline.** No later than 90 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

10.2.    **Responsibility for Objecting to Claims.** The Reorganized Debtor shall be responsible for objecting to Claims.

10.3.    **No Distributions Pending Allowance.** Only Allowed claims may be paid. No distribution shall be made with respect to any Contested Claim or Interest, even if a portion of the Claim or Interest is not disputed, until the entire Claim or Interest within the applicable Plan Class is resolved by a Final Order, unless a creditor obtains an order of the Court to the contrary. For Claims Allowed under the Plan, the Confirmation Order shall be deemed to be the order resolving such Claim.

10.4.    **Allocated Distributions.** As to any disputed Claim, upon request for an estimate under Bankruptcy Code §502(c), the Bankruptcy Court shall estimate the disputed Claim for the purpose of allowing the Reorganized Debtor to fix the maximum distribution to which such disputed Claim will ever be entitled. Within 90 days after the Effective Date, the Reorganized Debtor shall object pursuant to §502(a) of the Bankruptcy Code, or otherwise seek to fix the amount of any unliquidated Claim.

10.5.    **MMS; New Mexico Energy, Minerals, and Natural Resources; and BIA Claims.** The Debtor does not intend to pay the protective claims filed by the New Mexico Oil Conservation Division (#65, 66), the MMS (Claim #22, 63) and the BIA. These claims are mostly for estimated future plugging costs that the Debtor has not yet incurred. The Debtor is not seeking to discharge future plugging costs and will specifically except them from discharge if needed. Likewise the MMS claim is based upon alleged royalties owed in 1984-1995, not assessed on the amounts actually paid for hydrocarbons, but by some other formula. The MMS claim is also barred by limitations. The costs are not amounts owed and are not debts - defined by the bankruptcy code as "liability on a claim". Accordingly, no disputed claims reserve is set aside for these claims. Claim objections have been filed to disallow these claims. Disallowance of the MMS claim to an amount feasible as a Class 3 claim is a condition of Plan Confirmation.

10.6.    **Distribution After Allowance.** Payment to each holder of a disputed Claim, to the extent it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of claims to which the disputed claim belongs. Payments will commence on the next payment date occurring after the order or judgment of the bankruptcy court in which the order or judgment of the bankruptcy court allowing such claim becomes a Final Order and is not subject to appeal, The money shall be distributed on a going-forward basis,

together with all interest or other earnings actually earned thereon to the date such distributions are made, except that interest shall accumulate as of the Effective Date.

10.7. **Treatment of Contingent Claims.** Contingent Claims shall not be paid unless they are Allowed Claims before the Confirmation Order is entered.

## 11. ACCEPTANCE OR REJECTION OF PLAN

11.1. **All Classes to Vote.** Each Class of Claims shall vote separately to accept or reject the Plan.

11.2. **Acceptance By Class of Creditors.** An impaired Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class that are voted. For purposes of this Section, a vote shall not be counted if under the Bankruptcy Court rules it should not be counted pursuant to §1126(e), Bankruptcy Rules of Procedure, or other applicable law.

11.3. **Confirmation Pursuant to §1129(b) of the Bankruptcy Code.** If any impaired class of claims fails to accept the Plan in accordance with §1126 of the Bankruptcy Code, the Plan Proponents will request the Bankruptcy Court to confirm the Plan in accordance with §1129(b) of the Bankruptcy Code and hereby so moves the Court for confirmation in accordance therewith and specifically pleads that the Plan is fair and equitable to such Class.

11.4. **Conditions to Confirmation.** This plan shall not be confirmed unless all documents effectuating the plan are acceptable to McElvenny, Ralph McElvenny controls the Debtor and Reorganized Debtor, and the subordination of McElvenny's claim as set forth herein has been authorized. The Settlement with MLG must also be approved by confirmation of the Plan. Notwithstanding the above, McElvenny may waive the nonoccurrence of any condition. The Plan is conditioned upon disallowance of the MMS claim and/or allowance in an amount that is feasible to be satisfied through the treatment of Class 3 creditors. The Plan is likewise conditioned on the disallowance of any "protective" claims, to the extent that the claim is Allowed for a dollar amount.

## 12. MAINTENANCE OF CAUSES OF ACTION

12.1. **Avoidance and Recovery Actions.** No avoidance or recovery actions are anticipated. After the Effective Date, the Reorganized Debtor may litigate any avoidance or recovery actions under §544, §545, §547, §548, §549, §550, §551, and §553 of the Bankruptcy Code, if such a transfer is discovered.

12.2. **Other Maintained Causes of Action.** The Debtor further retains its rights to enforce claims against Creditors.

12.3. **Claims Objections.** The Debtor will object to certain claims at or before the confirmation date. However, those objections may not be resolved by

confirmation. Thus, the Debtor may litigate the claim objections to determine the status of claims post-confirmation.

### 12.4. No Anticipated Litigation against McElvenny

Under the Bankruptcy Code, certain transfers (including perfection of liens) made before the bankruptcy filing may be recovered by the estate. The only anticipated avoidance litigation would be a preference claim against McElvenny, who is agreeing to subordinate his right to payment in exchange for (among other things) a release of such liability. Accordingly, the Debtor does not anticipate any litigation to avoid preferential or fraudulent transfers.

### 12.5. Litigation to Collect Accounts Receivable and Amounts Owed

This is Described in Section 6 3 above.

## 13. VESTING OF PROPERTY OF THE ESTATE OF GOCO

### 13.1.

Except as otherwise provided for in the Plan or Order Confirming Plan, upon the Effective Date all property of GOCO's estate, wherever situated, shall vest in the Reorganized Debtor, and **shall be free and clear of all Claims, liens, and interest**; except the claims of the Disbursing Agent arising under or provided for in the Plan and to the extent provided by the Plan. Each Holder of a Secured Claim shall provide written evidence of release of its lien Claim when reasonably requested by the Reorganized Debtor.

## 14. DISCHARGE

### 14.1.

**Injunction.** From and after the Effective Date, all Holders of Claims against GOCO that exist on the date of entry of the Order Confirming Plan are permanently restrained and enjoined from continuing, or taking any act, to enforce such Claims against GOCO or any of its assets or properties as well as any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a Claim; provided, however, notwithstanding any provision in the Plan to the contrary, nothing herein shall effect the right of any Holder of a Claim to prosecute its proof of Claim (including without limitation any proof of Claim or application for payment of an Administrative Claim that any professional retained by Court order during the GOCO reorganization case may hereafter file in accordance with this Plan in the Bankruptcy Court or such other Court to which the matter may be referred) and all Holders of Claims shall be entitled to enforce their rights under the Plan.

### 14.2.

**Release: On the Effective Date, the following individuals and entities shall be forever released and discharged from any and all claims, actions, suits, debts, accounts, Causes of Action, agreements, promises, damages, judgments, demands and liabilities which the Debtor or Creditors and Persons receiving or who are entitled to receive distributions under the Plan may have against**

**them in any way related to the Debtor (including its predecessors or Affiliates) or this Case: (i) the Debtor, and (ii) all directors, officers, Associates, employees, members, partners, Professionals or agents of the Debtor who served the Debtor on or after the Petition Date, and (iii) McElvenny and any of his Affiliates or Associates and all directors, officers, managers, partners, employees, Professionals or agents of the Plan Sponsors or such Affiliates or Associates, both of the foregoing (in clauses (i) and/or (ii)) in any capacity whatsoever.**

14.3. **Jicarilla Release.** The Jicarilla Indian Nation has previously assessed clean-up costs for non-hazardous waste removal to clean up waste buried by Chace Oil, the previous lessee. The Debtor does not own the wells, it merely operates them or has a farmout agreement. Accordingly, the Debtor and its affiliates do not believe they have an obligation for similar cleanups. Accordingly, the Debtor and its Affiliates and Insiders are released and discharged for any liability to the Jicarilla Indian Nation to remove buried waste at other wells operated by the Debtor, unless placed there by the Debtor.

14.4. **McElvenny Release.** All Claims or causes of action by a Holder of a Claim or Interest of the Debtor or its Affiliates (including Limited Partnerships of which the Debtor is a General Partner) against Ralph T. McElvenny, Jr. and his affiliates are hereby released and forever discharged.

14.5. **Termination of Interests.** Pursuant to 11 U.S.C. § 1141(d)(1)(B), upon the Effective Date, the rights of all Interest Holders are terminated.

## 15. RETENTION OF JURISDICTION

15.1. Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding this Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and this Plan, to the fullest extent permitted by law, including jurisdiction to:

15.1.1. determine any and all objections to the allowance of Claims or Equity Interests;

15.1.2. determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

15.1.3. determine any and all motions to subordinate Claims or Equity Interests at any time and on any basis permitted by applicable law;

15.1.4. hear and determine all Professional Fee Claims and other Administrative Expense Claims;

15.1.5. hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary,

the nature or amount of any required Cure or the liquidation of any Claims arising therefrom;

15.1.6. hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

15.1.7. enter such orders as may be necessary or appropriate in aid of the consummation hereof and to execute, implement, or consummate the provisions hereof and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement and/or the Confirmation Order;

15.1.8. hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement hereof and all contracts, instruments, and other agreements executed in connection with this Plan;

15.1.9. hear and determine any request to modify this Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

15.1.10. issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, consummation, or enforcement hereof or the Confirmation Order;

15.1.11. enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

15.1.12. hear and determine any matters arising in connection with or relating hereto, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

15.1.13. enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

15.1.14. recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

15.1.15. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

15.1.16. hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

15.1.17. hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

15.1.18. enter a final decree closing the Chapter 11 Case,

15.2. **Failure of Bankruptcy Court to Exercise Jurisdiction**. If (after notice to the Bankruptcy Court and the Reorganized Debtor) the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Section 15.1 of the Plan, then this Article shall not prohibit or limit the exercise of jurisdiction by other courts having jurisdiction with respect to such matter.

## 16.   CREDITOR ENFORCEMENT ON DEFAULT

16.1. Substantial consummation of the Plan shall occur prior to entry of a final decree and any defaults under the confirmed Plan occurring after entry of a final decree shall be a liability of the newly Reorganized Debtor.

16.2. Any Creditor remedies allowed by 11 U.S.C.§1112(b)(8) shall be preserved by the Disbursing Agent to the extent otherwise available at law.

16.3. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment to the Disbursing Agent pursuant to the terms of this Plan shall be an event of default  If the Reorganized Debtor fails to cure an event of default as to such payments within thirty (30) days after service of a written notice of default from the Disbursing Agent, then the Disbursing Agent may exercise any and all rights and remedies under applicable non-bankruptcy law to collect such Claim or seek such relief as may be appropriate in the United States Bankruptcy Court.  Any secured creditor holding an Allowed Claim shall have the right to enforce its rights under the applicable loan and security agreement in the event of a Default under this Plan.

## 17.   MISCELLANEOUS PROVISIONS

17.1. Execution of documents in furtherance of the Plan.  Upon reasonable notice after Effective Date, GOCO will cooperate with each class of Creditor treated under Section 5 of the Plan by executing documents necessary to acknowledge or memorialize the terms of this Plan as approved by the Order Confirming Plan including but not limited to notes, financing statements, and loan agreements. Provided however, such agreements shall be in substantial compliance with the terms of the Plan and any expense for preparation of same shall be borne by the party requesting compliance with this Section and to the extent provided by the Plan, each claimant shall provide written evidence of release of its Claim when reasonably requested by the Reorganized Debtor.

17.2. **Headings.** Headings are utilized in the Plan for convenience of reference only, and shall not constitute a part of the Plan for any other purpose.

17.3. **Defects, omissions, and amendments not material and adverse.**  The Plan proponents may, with the approval of the Bankruptcy Court and without notice to all holders of Claims or Interests, correct any defect, omission, or inconsistency in

the Plan in such manner as to such extent as may be necessary or desirable, insofar as such changes do not materially and adversely effect Holders of Claims.

17.4    **Amendments, Material and Adverse.** Material or adverse amendments may be made to the Plan before or after confirmation in compliance with the Bankruptcy Code.

17.5.   **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of Texas shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (ii) the laws of the state of incorporation, formation or organization, as applicable, of the Debtor shall govern corporate governance matters with respect to Debtor, in either case without giving effect to the principles of conflicts of law thereof.

17.6.   **Prepayment.** Except as otherwise provided herein or the Confirmation Order, the Debtor and/or Disbursing Agent have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, however, that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

17.7.   **Notices.** All notices, request or demands for payments provided for in the Plan shall be in writing and shall be deemed to be given when received as certified United States Mail.  Notices, requests, and demands for payment shall be addressed and sent postage prepaid to: GOCO  REORGANIZATION PLAN, 2200 Post Oak Boulevard, Suite 720, Houston, Texas 77056 with a copy to PETER JOHNSON, ATTORNEY FOR GOCO, 11 Greenway Plaza, Suite 2820, Houston, Texas 77046 and another copy by certified mail to EDWARD L. ROTHBERG, 11 Greenway Plaza, Suite 1400, Houston, Texas 77046. Unless advised in writing,  all distributions made by the Disbursing Agent will be made to the address of the claimant listed in the Debtor's schedules on file with the Bankruptcy Court unless a proof of claim has been filed with a different address. Any notice of change of address shall be effective only upon receipt by the Reorganized Debtor and Disbursing Agent.

17.8.   **Severability.**   Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any an all other provisions of the Plan.

17.9.   **Income Tax Reporting and Withholding.** In connection with the Plan, GOCO shall comply with all reporting requirements imposed by federal, tax, local and foreign taxing authorities, and all distributions hereunder shall be subject to any withholding and reporting requirements.  Creditors may be required to provide certain tax reporting information as a condition to receipt of distributions pursuant to the Plan.

17.10.  **Section 1125(e) of the Bankruptcy Code.** As of the Confirmation Date, the Debtor and Reorganized Debtor shall be deemed to have solicited acceptances hereof in good faith and in compliance with the applicable provisions of the

Bankruptcy Code. As of the Confirmation Date, the Debtor, and its respective affiliates, agents, directors, officers, employees, investment bankers, financial advisors, attorneys, and other professionals shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of new shares of stock hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or the offer and issuance of securities hereunder.

17.11. **Preservation of Setoff and Other Rights.**

17.11.1. In the event that the Debtor has a claim of any nature whatsoever against the Holder of a Claim, the Reorganized Debtor may, but is not required to, setoff against the Claim any payments or other distributions to be made in respect of such Claim hereunder, subject to the provision of 11 U.S.C. § 553. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Reorganized Debtor of any claim the Reorganized Debtor has against the Holder of a Claim.

17.11.2. Neither this provision nor the injunctive provisions of the Order Confirming Plan shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; provided that the exercise of such right shall not be permitted unless the Creditor provides the Reorganized Debtor with written notice of the intent to effect such setoff or recoupment. If the Reorganized Debtor objects in writing within ten (10) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court. In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the claim held by the Reorganized Debtor in its own capacity or in its capacity as the successor to the Debtor.

17.12. **Lawsuits.**  On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings judicial or administrative in connection with the assertion of a Claim against the Debtor, except proof of Claims and/or objection thereto pending in the Bankruptcy Court shall be dismissed as to the Debtor. Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed in the Plan. All parties to any such action shall be enjoined by the Bankruptcy court in the Order Confirming Plan from taking any action to impede the immediate and unconditional dismissal of such actions. All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of claims by the Debtor against a person shall remain in place only with respect to the claims asserted by the Debtor or such other entity, and shall become property of the Reorganized Debtor to prosecute, settle or dismiss as the Reorganized Debtor sees fit without the requirement of Bankruptcy Court approval.

17.13. **Insurance.**  Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor or any of the Debtor's

representatives is or was the insured party; the Reorganized Debtor shall become the insured party under any such policies without the need of further documentation other the Plan and entry of the Order Confirming Plan. Each insurance company is prohibited from, and the Order Confirming Plan shall include an injunction against denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan.

17.14. **Release and Exculpation.** Neither the Debtor or McElvenny shall have or incur any liability to any Holder of a Claim or Interest for any act, event or omission in connection with, or arising out of, the Chapter 11 case, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan except for willful misconduct.

17.15. **De Minimis Distribution.** No distribution of less than $25.00 shall be required to be made to any Holder of an Allowed Claim. Such undistributed amount may be retained by the Reorganized Debtor.

17.16. **Bankruptcy Restrictions.** From and after the Effective Date, the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g. section 363, 34 rule 9019), the Bankruptcy Court or the United States Trustee's guidelines. The Reorganized Debtor may compromise claims and controversies post-Effective Date without the need of notice or Bankruptcy Court approval. The Reorganized Debtor may operate the Debtor's business in such manner as is consistent with companies not in bankruptcy without the need of seeking Bankruptcy Court approval with regard to any aspect of its business. No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor shall provide the U.S. Trustee such financial reports as the U.S. Trustee may reasonably request until the entry of a final decree.

17.17. **Binding Effect.** The Plan shall be binding upon an inure to the benefit of the Debtor, the Holders of Claims, the Holders of Interests, the Reorganized Debtor and all of their respective successors and assignees; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed (a) to constitute a waiver or release of any Claims by the Debtor or any other person, (b) to prejudice in any manner the rights of the Debtor or any other person or (c) to constitute any admission by the Debtor or any other person.

17.18. **Closing the Case.** Upon the Plan being substantially consummated and, upon motion by the Reorganized Debtor, a final decree shall be entered containing such provisions as may be equitable. The Court may close the case, but retain jurisdiction to hear and decide: any and all pending adversary proceedings, applications and contested matters, including any remands of appeals, and any all pending objections to Claims or the allowance, including with respect to the classification, priority, estimation or payment of any Claim; any and all pending fee applications.

17.19. **Modification of the Plan.** The Proponents may propose amendments and modifications of this Plan through the Confirmation Date, with leave of the Bankruptcy Court upon appropriate notice. After the Confirmation Date, the Proponents may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order Confirming Plan in such manner as may be necessary to carry out the intendment of this Plan. After the Confirmation Date, the Proponents may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class; provided, however, such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure. With respect to all proposed modifications to the Plan both before and after confirmation, the Proponents shall comply with the requirements of Section 1127 of the Bankruptcy Code.

DATED: April 22, 2004

Respectfully submitted,

___Ralph T. McElvenny___
**Ralph McElvenny, Jr., President**
**Golden Oil Company**

**LAW OFFICES OF PETER JOHNSON**

By:__Peter Johnson, By Permission *HMR*____
PETER JOHNSON
SBT #10778400 FB#2475
Eleven Greenway Plaza
Summit Tower, Suite 2820
Houston, Texas 77046
Telephone (713) 552-0025
Telefax (713) 552-1433
pjohnson@pjlaw.com
Attorney for Golden Oil Company

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**

By:_____*Hugh M. Ray, III*_____
     Hugh M. Ray, III
     Bar No. 24004246, FBN 22090
     11 Greenway Plaza, Suite 1400
     Houston, Texas 77046
     (713) 961-9045
     Fax: (713) 961-5341
     Attorneys for McElvenny

4/22/2004 :0328900