IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE GOLDEN OIL COMPANY, *Debtor*   }   Bankruptcy No. 03-36974
                                                                          }   Civil Action No. H-06-2239

## MEMORANDUM OPINION AND ORDER

Petitioner Golden Oil Company ("Golden Oil") is an owner and operator of oil and gas wells in Oklahoma and New Mexico.  Among Golden Oil's wells, are wells located on an Apache Indian reservation in the San Juan Basin, New Mexico.  The wells, referred to as the Number 47 Lease, are operated under a farmout agreement with Respondent Energen Resources Corporation ("Energen").  Golden Oil filed for Chapter 11 Bankruptcy on May 12, 2003.  However, before the Bankruptcy Court could confirm Golden Oil's reorganization plan, Golden Oil had to reach compromises with several of its creditors, including Energen.  One of Energen's concerns was insuring that the plugging and abandonment costs of the Contract 47 Lease wells would be borne by Golden Oil.  Eventually, the parties agreed that a lien would be created for this purpose.  The current dispute concerns, primarily, what form this lien will take.  The Bankruptcy Court ruled that, to satisfy its obligations under the agreement, Golden Oil had to deliver a mortgage to Energen on the subject wells, not a security interest in their production.  The Bankruptcy Court also ordered Titan Wells Incorporated ("Titan"), a non-party, to subordinate its mortgage to Energen's. Golden Oil takes its appeal from these rulings (Bkr. Dkt. 560 & 569).  For the following reasons, the Court affirms.

I. Relevant Factual Background

The relevant factual background of this case is uncontested.  Energen, a creditor, filed an objection to Golden Oil's proposed plan of reorganization.  The plan proponents, Ralph McElvenny, Aeorpanel Corporation, Instrument Specialties Co., and Golden Oil reached an agreement with Energen.  On May 25, 2004, Energen filed a limited objection (Bkr. Dkt. 265) to the reorganization plan informing the court of the tentative agreement.

The day after Energen filed its limited objection, the plan proponents filed their "Notice of Plan Modification"(Bkr. Dkt. 290) and their "Motion to Modify Plan" (Bkr. Dkt. 291). The proposed modification contained the following language: "McIlvenny [sic] and the other plan proponents agree to grant a first lien, superior to their liens, for $14,000 per well in the 47 lease . . ." (¶ 6.13.5.) The following day the plan proponents amended the plan modification to read as follows:

> 6.13.5 Mr. McElvenny and the other plan proponents agree to grant a first priority lien on all of Debtors' Contract 47 production oil and gas proceeds therefrom, including those rights obtained under the MLG Settlement, superior to their liens; including in the event of a default or foreclosure, for the ongoing payments into the escrow account referred to in 6.13.3 and for plugging and abandonment obligations arising or accrued on the Debtors [sic] operated portion of Contract 47 and the associated wells (up to $15,000 per well), crosscollateralized [sic] in all wells in the 47 lease. . .
>
> 6.13.7 The parties will execute additional documentation of the transactions discussed in this paragraph separately from the Plan, including mutual releases and documents necessary to perfect the security interests described in this paragraph.

(Amended Plan Modification Bkr. Dkt. 292.)

On October 6, 2004, the parties convened before the Bankruptcy Court to confirm Golden Oil's reorganization plan. Counsel for Energen informed the court that the parties were in agreement on the substantive provisions of the plan, but had to iron out some last minute issues regarding the settlement. The court took a brief recess. When the hearing resumed, the parties were asked whether there were any amendments they wanted to make to the order. (Tr. 5:17-20 Dkt 3, Ex. 10.) "We're copacetic, Your Honor." proponent's counsel replied. (Tr. 5:21.) Energen's counsel agreed that no amendments needed to be made, but stated his desire to further clarify the "understanding of the parties" for the record. (Tr. 5:22-25.) Leave was granted, and Energen's counsel stated in relevant part:

> The second point is that as part of the implementation of the lien and priority rights that were granted under the settlement, that Energen will be granted a first mortgage on the contract 47 properties. There was some discussion about that, but I think we've resolved. There may have been a misunderstanding about that, but they are granting us a first mortgage ahead of Mr. McElvenny's mortgages and any other mortgages.
>
> And I think the confirmation order actually reflects that now, but I would like to – If I do need to have that amended , I would like to sit down with Mr. Ray and make sure that there is something in the confirmation order that provides that so that I could file that of record. It does provide it. If it does provide it, then I have no issue.

(Tr. 7:3-17.) The court then observed that the details of the settlement should not be a concern for the court (Tr. 8:19-24), to which proponent's counsel replied:

> Well, I agree, Your Honor. I think that's correct. The modification that deals with the Energen settlement, sets out the major terms, and this is getting the documents in place. And we did have a dispute over those documents, but I think the dispute's been resolved now with the – and just to clarify the record, the mortgage that's being granted to Energen for the first lien is limited to the security obligations for plugging and abandonment only. It's not a mortgage for – overall first lien mortgage for all amounts due Energen

(Tr. 8:25-9:9.) The confirmation order was submitted later that day and entered on October 7, 2004.

On June 7, 2005, Energen filed its motion to enforce the settlement agreement (Bkr. Dkt. 497). Golden Oil responded on June 27, 2005, claiming that its delay was occasioned by the voluminous nature of Energen's requested settlement documents. (Response to Motion to Enforce Bkr. Dkt. 504.) On July 9th, the Bankruptcy court entered its "Order for Negotiation, Submission of Documents, Designation of Expert, and for Hearing" (Bkr. Dkt. 506). The court ordered that the parties confer and try and reach an agreement on the proper documents needed to finalize their settlement. *Id.* In the event the parties did not agree, the court ordered that they each submit proposed documents to the court on or before September 9, 2005. *Id.* The court also ordered the parties to confer and propose an expert to help the court determine what documents would be necessary to accomplish the settlement. *Id.* Finally, the court scheduled a hearing on September 27, 2005. *Id.*

When the parties were unable to agree on whether the settlement required Golden Oil to give Energen a mortgage on the Number 47 Lease wells, the Bankruptcy Court conducted a two day hearing to resolve the issue. On May 22, 2006, the Bankruptcy Court issued its "Memorandum Findings of Fact and Conclusions of Law and Order for Enforcement of Settlement Agreement"(Bkr. Dkt. 560).

The Bankruptcy Court's order finds for Energen on the mortgage issue; specifically, the Bankruptcy court found that the parties clarified at the October 6th confirmation hearing that "Energen was to be given a mortgage, not merely a lien in the form of a contingent assignment of production" and "that the language in the chapter 11 plan and confirmation order <u>must</u> be

interpreted in light of the clear statement of the parties on the record on October 6."(Findings of Fact and Conclusions of Law and Order for Enforcement of Settlement Agreement 6.)  The Bankruptcy Court entered its Final Order (Bkr. Dkt. 568) on June 20, 2006.  It requires, *inter alia*, that Titan subordinate its first priority mortgage to Energen's.  Furthermore, it denies Energen's request for attorney's fees.  Golden Oil filed its notice of appeal (Bkr. Dkt. 571) on June 30, 2006.

II. Legal Standard

This is an appeal pursuant to Title 28 United States Code Section 158(a)(1).  The court reviews findings of fact by the bankruptcy court under the clearly erroneous standard and reviews issues of law and mixed questions of law and fact *de novo*. *Universal Seismic Assocs. Inc. v. Harris County (In re Universal Seismic Assocs., Inc.)*, 288 F.3d 205, 207 (5th Cir. 2002).  The decision to admit or exclude evidence is reviewed under an abuse of discretion analysis.

III. Issues on Appeal

The parties have raised five issues on appeal.  Golden Oil raises three issues: one, whether the Bankruptcy Court erred in finding that the settlement required Golden Oil to give Energen a mortgage on the Number 47 Lease wells (Pet'r. Br. 6 (Dkt. 9)); two, whether the Bankruptcy Court erred in not giving more weight to the expert's testimony (Pet'r. Br. 7); and three, whether the Bankruptcy Court erred in ordering Titan to subordinate its mortgage to Energen's  (Pet'r. Br. 7).  Energen raises two issues: one, whether the Bankruptcy Court erred in denying its request for attorney's fees (Resp't Br. 2); and two, whether the Bankruptcy Court erred in ordering an escrow agreement in form other than "satisfactory to Energen" (Resp't Br. 2).  The Court will consider each issue in turn.

IV. Analysis

The Bankruptcy Court did not commit error when it ruled that the parties agreement needed to be interpreted in light of the parties statements on the record.  The parties agreement, as memorialized in the reorganization plan, contemplates that "the parties will execute additional documentation of the transactions discussed . . . separately from the Plan, including . . . documents necessary to perfect the security interests described." (Plan ¶ 6.13.7.); *see also In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir. 1981) (reorganization plan "should be construed basically

as a contract."). This provision leaves open the question of what security interest will be adopted, a question the parties answered at the confirmation hearing when they stated that the security interest would be a first priority mortgage. Golden Oil's claim that the court reached a conclusion contrary to that of the expert is unavailing. As Petitioner points out, the scope of the expert's duty was to report on which set of documents, Petitioner's or Energen's, most closely accomplished the requirements of the settlement agreement. (Pet'r Br.33.) As this court has already noted, the nature of the security instrument to be adopted was not established in the Plan, therefore the expert's opinion was of little, if any, bearing.

Golden Oil's last point of error is that the Bankruptcy Court violated due process when it ordered a non-party, Titan, to subordinate its mortgage to Energen. Titan is not a party to this appeal and Golden Oil does not have standing to assert Titan's right to due process. Accordingly, Golden Oil's last point of error is dismissed.

Neither of Energen's arguments are persuasive. The Bankruptcy Court acted within its discretion when it denied Energen's motion for attorney's fees. A plan of reorganization is not a contract for the purposes of Texas Civil Practice and Remedies Code Section 38.001 (authorizing attorney's fees in breach of contract cases). Likewise, the Bankruptcy Court acted properly when it read a reasonability clause into that section of the Plan requiring an escrow in form "satisfactory to Energen."

V. Conclusion

For the aforementioned reasons, the Court ORDERS that the judgment of the Bankruptcy Court is AFFIRMED.

Signed at Houston, Texas, this 27th day of March, 2007.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE